Shelley **ALIOTTI** and John **Aliotti**,
Plaintiffs-Appellants,

v.

R. **DAKIN & CO.**, a California corporation, Defendant-Appellee.

No. 86–2584.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1987.

Decided Nov. 4, 1987.

Richard H. Rosenthal, Carmel Valley, Cal., for plaintiffs-appellants.

Daniel J. Furniss, San Francisco, Cal., for defendant-appellee.

Before GOODWIN, ALARCON and LEAVY, Circuit Judges.

GOODWIN, Circuit Judge:

Shelley and John Aliotti appeal an adverse summary judgment in their damage action for copyright infringement and related grievances.

Shelley Aliotti is a designer of craftwork and toys. From 1976 to 1979 she worked on a contract basis for Favorite Things, Inc., a Carmel-based toy manufacturer. She designed soft pillows, stuffed animals, and other items directed toward the children's market. The Aliottis acquired copyrights to items created by them after Favorite Things, Inc. became bankrupt in 1982.

In November 1978, Bernard Friedman, the president of Favorite Things, telephoned Harold Nizamian, the president of appellee R. Dakin Co., to ask him whether Dakin would be interested in acquiring Favorite Things. After this phone conversation, Friedman sent Nizamian a letter and pictures of various products manufactured by Favorite Things. Upon a request from Dakin's board of directors for additional information, Friedman complied and sent Nizamian a presentation booklet, which included data concerning the production and sale of its merchandise. Friedman also sent Dakin a copy of Favorite Things' current sales brochure, which included photographs of three stuffed toy dinosaurs—Brontosaurus, Stegosaurus and Triceratops—which had been designed by Shelley Aliotti and were being marketed as the "Ding-A-Saur" line.

During a March 1979 meeting at Favorite Things' office, Friedman and Aliotti showed two Dakin executives many of Favorite Things' designs, including many products designed by Aliotti. In addition to the three stuffed dinosaurs already marketed by Favorite Things, Aliotti displayed prototypes of three additional Ding-A-Saurs—Tyrannosaurus Rex, Pterodactyl and Woolly Mammoth. The parties did not discuss the possibility that Dakin might purchase any particular design. After the meeting, the Dakin executives told Shelley Aliotti to contact them if she was interested in being considered for employment at Dakin.

In April 1979, Dakin's board of directors decided not to acquire Favorite Things. In July or August 1979, Dakin began developing its own line of stuffed toy dinosaurs. Dakin first offered its "Prehistoric Pet" line for sale in its fall catalog, which was released in June 1980. The six stuffed animals offered by Dakin were of the same six species as those presented to Dakin by Aliotti. Although Dakin offered affidavits supporting its claim that its employees independently developed its dinosaur line, for the purposes of summary judgment we assume that Dakin appropriated Aliotti's idea of producing stuffed dinosaur dolls.

## DISCUSSION

### I. Copyright Claims

■ The district court's grant of summary judgment on the copyright claims is subject to *de novo* review. *See Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 69 (1985). Although "summary judgment is not highly favored on the substantial similarity issue in copyright cases," *id.*, it is appropriate if "the court concludes that no reasonable jury could find substantial similarity of both ideas and expression between the works at issue." *Frybarger v. International Business Machines Corp.*, 812 F.2d 525, 528 (9th Cir.1987). *See* Fed. R.Civ.P. 56(c) (allowing summary judgment when "there is no genuine issue as to any material fact").

To prevail on her copyright claims at trial, Aliotti must prove (1) that she owned the copyrights, (2) that Dakin had access to her designs, and (3) that there is "substantial similarity" between her designs and Dakin's stuffed animals. *See Berkic*, 761 F.2d at 1291; *Sid and Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977). Because there exist genuine issues of material fact on the issues of ownership and access, summary judgment is appropriate on the copyright claims only if no reasonable jury could find the two lines of stuffed animals to be substantially similar to one another. *See Worth v. Selchow & Righter Co.*, 827 F.2d 569, 571 (9th Cir.1987).

■ *Krofft* sets forth a two-part test for determining whether one work is substantially similar to another. *See Krofft*, 562 F.2d at 1164; *see also Berkic*, 761 F.2d at 1292; *Jason v. Fonda*, 526 F.Supp. 774, 777 (C.D.Ca.1981), *aff'd*, 698 F.2d 966 (9th Cir. 1982). The "extrinsic" test, used to determine whether two ideas are substantially similar, is objective, resting upon specific criteria that can be listed and analyzed. *See Krofft*, 562 F.2d at 1164. The "intrinsic" test, which is used to compare forms of expression, is more subjective, "depending on the response of the ordinary reasonable person." *Id.* Appellants argue that the district court failed to articulate the applicable law or to apply the two tests to the facts of this case.

The district court's order granting summary judgment distinguished between idea and expression but never explicitly applied the extrinsic and intrinsic tests:

> The dolls at issue here derive from the same idea of stuffed dinosaur dolls, but they differ in the expression of that idea. The "Ding-A-Saur" dolls depict a sleepy eyed, "dingy" dinosaur with exaggerated facial and other anatomical features. The stitching on each dinosaur is raised and distinctive, and generally, they are constructed of a distinctive suede-like material. By contrast, the Dakin "Prehistoric Pet" dolls are more accurate depictions of dinosaurs; the dolls reflect less personality. They have no sleepy-eyed look or exaggerated features. They are constructed with a plush material, and the stitching is hidden.
>
> As a matter of law, considering the total concept and feel of the products, the allegedly infringing dolls are not copies of the plaintiffs' "Ding-A-Saurs." No ordinary person could reasonably find that the dolls are so substantially similar as to render one a copy of the other; the dolls are substantially dissimilar.

Order Granting Summary Judgment at 2–3, No. 84–20368 (N.D.Cal. April 29, 1986).

As the district court recognized in its statement that the dolls "derive from the same idea," the extrinsic test is satisfied

here because both lines of products depict the same subject matter—stuffed dinosaur toys. *See McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 319 (9th Cir.1987) (finding the extrinsic test to have been conducted adequately where the district court's findings indicated that it had found a similarity of ideas).

Appellants argue correctly that the district court's determination as to substantial similarity of expression relied incorrectly on the analytic dissection of the dissimilar characteristics of the dolls. *See Krofft*, 562 F.2d at 1164 (observing that analytic dissection is not appropriate under the intrinsic test). Similarity of expression exists only when "the total concept and feel of the works" is substantially similar. *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985); *Krofft*, 562 F.2d at 1164. Dissection of dissimilarities is inappropriate because it distracts a reasonable observer from a comparison of the total concept and feel of the works.

The inquiry into similarity of expression is modified by a line of cases recognized by *Krofft* but never satisfactorily integrated into the two-part *Krofft* framework. *See Krofft*, 562 F.2d at 1167–69. No substantial similarity of expression will be found when "the idea and its expression are … inseparable," given that "protecting the expression in such circumstances would confer a monopoly of the idea upon the copyright owner." *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir.1971). *See Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 489 (9th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984) (factual works); *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983) (*scenes a faire* doctrine); *Krofft*, 562 F.2d at 1168.

Because these cases involve elements of expression, they properly may be assimilated within the analytical framework of the intrinsic test. To the extent that it is necessary to determine whether similarities result from unprotectable expression, it is appropriate under *Krofft's* intrinsic test to perform analytic dissection of *similarities*. Although even unprotectable material should be considered when determining if there is substantial similarity of expression, *see McCulloch*, 823 F.2d at 320–21, no substantial similarity may be found under the intrinsic test where analytic dissection demonstrates that all similarities in expression arise from the use of common ideas.

■ No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls. *See, e.g., Herbert Rosenthal Jewelry Corp.*, 446 F.2d 738 (finding idea and the expression of jeweled bee pins to be inseparable). Appellants therefore may place no reliance upon any similarity in expression resulting from either the physiognomy of dinosaurs or from the nature of stuffed animals. *See Frybarger*, 812 F.2d at 529–30 (quoting *Atari, Inc. v. North American Philips Consumer Elecs. Corp.*, 672 F.2d 607, 616 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982)) (finding that certain video game features are "as a practical matter indispensable, or at least standard, in the treatment of a given [idea]").

Thus, the intrinsic test is not satisfied merely because the Ding-A-Saurs and the Prehistoric Pets share similar postures and body designs. Substantial similarity of expression cannot be established by the fact that both lines of dinosaurs are gentle and cuddly, given that stuffed animals are intended for children and are usually designed to be soft and nonthreatening. Although the eye style and stitching of the Ding-A-Saurs are not dictated by the idea of stuffed dinosaur dolls and thus constitute protectable expression, Dakin's Prehistoric Pets do not incorporate these elements of expression.[1]

---

1. Appellants argue that substantial similarity of expression is evidenced by certain telling similarities between corresponding dolls in the two lines. Aliotti is correct that only the Tyrannosaurus in each line is depicted with its mouth open, but we observe that the Tyrannosaurus—unlike the other species—was a carnivore and is commonly pictured with its mouth open. Similarly, we cannot find substantial similarity of expression in the fact that both Aliotti's Ptero-

Under the intrinsic test, we may find substantial similarity of expression only if a reasonable observer would infer that Dakin's dolls capture the "total concept and feel" of Shelley Aliotti's designs. *Litchfield*, 736 F.2d at 1357; *Krofft*, 562 F.2d at 1167. Because children are the intended market for the dolls, we must filter the intrinsic inquiry through the perception of children. *See Krofft*, 562 F.2d at 1166–67; *Ideal Toy Corp. v. Fab-Lu Ltd.*, 261 F.Supp. 238, 241–42 (S.D.N.Y.1966), *aff'd*, 360 F.2d 1021 (2d Cir.1966). Upon *de novo* review, we find that summary judgment was appropriate because there exists no substantial similarity of protectable expression.[2]

Appellants, relying upon dictum in *Krofft* that was based upon Professor Nimmer's treatise, argue strenuously that the district court erred in failing to decrease the quantum of similarity required in this case, where Dakin's access to her designs has been demonstrated. *See Krofft*, 562 F.2d at 1172. However, our finding that there exists no substantial similarity of protectable expression makes appellants' argument inapplicable, given that "[n]o amount of proof of access will suffice to show copying if there are no similarities." *Id. See* 3 M. Nimmer, *The Law of Copyright* § 13.03[D] (1987) (stating that "clear and convincing evidence of access will not avoid the necessity of also proving substantial similarity since access without similarity cannot create an inference of copying"). We thus need not address the continuing viability of Professor Nimmer's proposal, which has been employed by no Ninth Circuit case since *Krofft* and had been earlier criticized for "confus[ing] and even conceal[ing]" the requirement of substantial similarity. *See ARC Music Corp. v. Lee*, 296 F.2d 186, 187–88 (2d Cir.1961).

## II. State Law Claims

Appellants challenge the district court's grant of summary judgment on their claims that Dakin breached an implied-in-fact contract by using Shelley Aliotti's designs without compensating her and that it committed a breach of confidence by disclosing her designs without permission. We review *de novo* the district court's grant of summary judgment on appellants' state law claims, *see Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986), and we apply California law, *see Landsberg v. Scrabble Crossword Game Players, Inc.*, 802 F.2d 1193, 1196 (9th Cir.1986).

Under California law, "for an implied-in-fact contract one must show: that he or she prepared the work; that he or she disclosed the work to the offeree for sale; under all circumstances attending disclosure it can be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered (i.e., the offeree must have the opportunity to reject the attempted disclosure if the conditions were unacceptable); and the reasonable value of the work." *Faris v. Enberg*, 97 Cal.App.3d 309, 318, 158 Cal.Rptr. 704, 709 (1979). "If disclosure occurs before it is known that compensation is a condition of its use, ... no contract will be implied." *Landsberg*, 802 F.2d at 1196 (citing *Desny v. Wilder*, 46 Cal.2d 715, 733, 299 P.2d 257, 270 (1956)).

The affidavits demonstrate that Shelley Aliotti made her presentation to Dakin not to sell her designs herself but to help persuade Dakin to buy Favorite Things. She argues that she disclosed her ideas because she hoped to obtain employment with Dakin, but no contract may be implied where an idea has been disclosed not to gain compensation for that idea but for the sole purpose of inducing the defendant to enter a future business relationship. *See Faris,*

---

dactyl and Dakin's Pteranodon were designed as mobiles, given that each was a winged creature and thus is appropriate for such treatment.

**2.** Appellants argue that we should find substantial similarity because Dakin produced the same five dinosaurs and one mammal as those she had created, giving rise to a strong inference

that Dakin copied her ideas. However, the appropriation of the idea (or six ideas) to make dolls of these species does not constitute a similarity in expression. *See Herbert Rosenthal Jewelry Corp.*, 446 F.2d at 741 (observing that "[o]thers are free to utilize the 'idea' so long as they do not plagiarize its 'expression'").

97 Cal.App.3d at 318–20, 158 Cal.Rptr. at 709–10. To evade this doctrine, Aliotti argues that Dakin, by employing her, would "put her ideas to work for them." Even if we accept the premise that Dakin assumed that by hiring Aliotti it could obtain designs that apparently belonged to Favorite Things, the uncontradicted evidence indicates that Aliotti displayed the dolls before Dakin executives suggested that their company might consider hiring her. *See Desny*, 46 Cal.2d at 739, 299 P.2d at 270 (observing that no contract will be implied where an "idea man" "blurts out his idea without first having made his bargain," even if the idea has been conveyed with some hope of entering into a contract). Thus, the district court properly granted summary judgment on appellants' claim for breach of an implied-in-fact contract. *See Faris*, 97 Cal.App.3d at 318, 58 Cal.Rptr. at 709.

To prevail on their claim for breach of confidence, appellants must show that: (1) they conveyed confidential and novel information; (2) Dakin had knowledge that the information was being disclosed in confidence; (3) there was an understanding between Dakin and appellants that the confidence be maintained; and (4) there was disclosure or use in violation of the understanding. *See Tele-Count Engineers v. Pacific Tel. & Tel.*, 168 Cal.App.3d 455, 462–66, 214 Cal.Rptr. 276, 279–82 (1985). Constructive notice of confidentiality is not sufficient. *Id.* at 463–64, 214 Cal.Rptr. at 280–81.

Because three of the Ding-A-Saurs were already on the market, Aliotti could not have conveyed confidential information concerning those dolls. Furthermore, she presented no testimony that Dakin knew that the information was disclosed in confidence or that the parties agreed that the confidences would be maintained. Only constructive knowledge of confidentiality may be inferred from Shelley Aliotti's testimony that she was sure there had been some discussion at the meeting about keeping the ideas confidential because "[i]t was presented to them under ... that these were our ideas, and we were introducing

them because they were considering buying the company." Thus, appellants' claim for breach of confidence must fail. *See id.*

## CONCLUSION

The district court properly granted summary judgment to Dakin on appellants' claims for copyright infringement, breach of an implied-in-fact contract, and breach of confidence.

Affirmed.