8 F.3d 29
 1993 Copr.L.Dec. P 27,153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dale F. RODESH; Robert M. Jones, Plaintiffs-Appellants,
v.
DISCTRONICS, INC.; Broadcast Edit, Defendants-Appellees.
 No. 91-55694.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1992.
Decided Sept. 30, 1993.
 
 Before: POOLE, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Dale E. Rodesh and Robert M. Jones ("Rodesh") appeal the district court's summary judgment in favor of Disctronics, Inc. and Broadcast Edit, Inc. ("Disctronics"). Rodesh alleged that Disctronics infringed his copyright in a video game involving horse races, and that Disctronics committed trade dress infringement in connection with the game. We now affirm in part, reverse in part, and remand.
 
 COPYRIGHT INFRINGEMENT
 
 3
 We review the district court's summary judgment ruling de novo. Frybarger v. IBM Corp., 812 F.2d 525, 528 (9th Cir.1987).
 
 
 4
 "To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." Pasillas v. McDonald's Corp., 927 F.2d 440, 442 (9th Cir.1991).
 
 
 5
 "Because direct copying is difficult to prove, a plaintiff can satisfy the second element by demonstrating that (a) the defendant had access to the allegedly infringed work and (b) the two works are substantially similar in both idea and expression of that idea." Id.
 
 
 6
 In this case, Disctronics concedes Rodesh's ownership of a copyright in the videodiscs "Quarter Horse" and "Horse Race II." Disctronics also concedes it had access to the discs. Finally, Disctronics concedes that its discs are substantially similar in idea to Rodesh's. We are left to decide only whether Disctronics' discs, "Deluxe Edition" and "Photo Finish," are substantially similar in expression to Rodesh's discs.
 
 
 7
 In answering this question, we must bear in mind the "axiom of copyright law that copyright protects only an author's expression of an idea, not the idea itself." Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 207 (9th Cir.1988); accord 17 U.S.C. § 102(b). Rodesh's "idea" in this case is a horse race video game where players can bet on the outcome of prerecorded, actual quarter horse races. Disctronics is free to copy this idea. It is Rodesh's expression of the idea, i.e., how the idea was made into a video disc, that is subject to copyright protection.
 
 
 8
 But sometimes an idea and its expression are inseparable. In such cases, even the expression of the idea may be copied with impunity, because "protecting the 'expression' ... would confer a monopoly of the 'idea' upon the copyright owner." Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 742 (9th Cir.1971) ("idea" of a jeweled bee pin was inseparable from the "expression" of a jeweled bee pin).
 
 
 9
 Thus, where similarities of expression "necessarily follow" from the original idea, Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir.1987), or where similar expression is "as a practical matter indispensable, or at least standard in the treatment of a given [idea]," Frybarger v. IBM Corp., 812 F.2d 525, 530 (9th Cir.1987) (internal quotes omitted), copying is not prohibited, at least short of "virtually identical copying," id., something not alleged here.[1]
 
 
 10
 What makes this case a bit tricky is that some of the expressive features of the video discs are inseparably linked to Rodesh's idea--the "scenes a faire "--while others are entirely independent of the idea. We held in an earlier appeal that "the sounds of hoof beats, crowds and commentators are inseparable from the idea of a horse race." Rodesh v. Disctronics, No. 89-56031 at 8 (9th Cir. July 23, 1990) But we held that "the use of Los Alamitos, the use of the same names of horses in the audio track, the use of a similar name for the games, and the use of a similar organization of races do not necessarily flow from the idea of a horse race." Id.
 
 
 11
 The first group of features, those flowing inescapably from the concept of a horse race, are not protected under Rodesh's copyright. They are like the jeweled bee pins in Kalpakian, whose features were too closely linked with the idea of such a pin to be protectable. On the other hand, the second set of features arose not through some ineluctable connection with the idea of a horse race, but by choice--Rodesh's choice, originally; later, Disctronics'. The question thus becomes how to compare works containing some protected and some unprotected expression. To answer this question it is helpful to examine the simpler case of two works in which all expression is protectable.
 
 
 12
 In such a case, this circuit has developed a two-part test for determining substantial similarity between two works. The first test is called the "extrinsic" test and compares the ideas of the two works to determine if they are substantially similar. Data East USA, Inc. v. Epyx, Inc., 862 F.2d at 208. This test is an "objective" one, that is, it allows "analytic dissection" of the idea into discrete components which can be objectively compared. Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir.1977).
 
 
 13
 Here, as already mentioned, Disctronics has conceded the substantial similarity (indeed, the identity) of the horse race ideas. So we move to the second of the two tests, the "intrinsic," or subjective, test. The test is called "subjective" because it measures "whether the ordinary reasonable person would find the 'total concept and feel' of the works" substantially similar. McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 319 (9th Cir.1987) (internal quotations omitted). Unlike the objective, extrinsic test, in the intrinsic test "analytic dissection" is forbidden. Sid & Marty Krofft, 562 F.2d at 1164. The whole idea is to view the work as a whole, not to break it apart into pieces for individual scrutiny. McCulloch, 823 F.2d at 320.
 
 
 14
 In the present case, some elements of Disctronics' work are inseparable from the idea of a horse race (the sounds of hoof beats and crowds, the commentator), while some are Rodesh's independent contribution (the use of Los Alamitos, the horses' names, the title of the works, and the organization of the works). How should this amalgam of protectable and unprotectable expression be compared to the original?
 
 
 15
 The answer is by factoring out all unprotectable elements before applying the subjective, "total concept and feel" test. Aliotti v. R. Dakin & Co., 831 F.2d at 901. In this factoring out process, analytic dissection is permitted, but only to determine which similarities are to be excluded from the "total concept and feel" comparison. Id. If after eliminating these elements the two works are substantially similar in "total concept and feel," infringement has been shown.
 
 
 16
 Disctronics asks us to factor out not only expression which is inseparably linked to Rodesh's ideas, but also each expressive element which is unprotectable for a different reason. For example, Disctronics argues that the name "Los Alamitos" should not be compared because it is an uncopyrightable preexisting name; that the titles of the discs should not be compared because "titles cannot be copyrighted"; and that the horse names should not be compared because they are not copyrightable.
 
 
 17
 This plainly misreads Aliotti and other Ninth Circuit cases. Aliotti excluded only expression inseparable from ideas; expression unprotectable for other reasons was still fair game for the "total concept and feel" test:
 
 
 18
 Although even unprotectable material should be considered when determining if there is substantial similarity of expression, no substantial similarity may be found under the intrinsic test where analytic dissection demonstrates all similarities arise from the use of common ideas.
 
 
 19
 Aliotti, 831 F.2d at 901 (emphasis added; citation omitted). Similarly, in McCulloch v. Albert E. Price, Inc., we said that "all of the elements of the work, including the uncopyrightable text, [should] be considered as a whole in determining copyright infringement." 823 F.2d at 320.
 
 
 20
 The reason for this rule is commonsensical and sound: part of what makes a work uniquely the author's own is how she or he arranges the materials within it. A work's originality can stem as much from an author's arrangement of component pieces as from the originality of the pieces themselves. It is for precisely this reason that the intrinsic, total concept and feel test forbids element-by-element comparison.
 
 
 21
 Accordingly, while it was proper to use analytic dissection to factor out the scenes a faire in Rodesh's disc, the remainder of the work must be compared as a whole--even if comprised of individually uncopyrightable elements.
 
 
 22
 We conclude that upon a proper comparison of two sets of discs, no reasonable factfinder could find substantial similarity of expression. To see why this is so, imagine several quarter-horse video games all sharing Rodesh's unprotectable scenes a faire--the actual horse-race videos, the hoof beats, the crowd sounds, the commentator, etc.--but with different remaining elements. For example, in one game there might be different horse names and a different race track name; in another, the name of the game might be different. All of these games would be extremely similar, despite entirely different non-scenes a faire elements. This shows that the scenes a faire elements account for the expressive similarity of the rival discs. Accordingly, the remaining elements cannot be said to make the two works substantially similar.
 
 
 23
 We affirm the district court's summary judgment on this claim.
 
 TRADE DRESS INFRINGEMENT
 
 24
 Rodesh also argues that Disctronics committed trade dress infringement of his product. see 15 U.S.C. § 1125(a). The district court granted summary judgment to Disctronics on this claim also, a decision we review de novo. HWE, Inc. v. JB Research, Inc., 993 F.2d 694, 696 (9th Cir.1993).
 
 
 25
 "[T]rade dress refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture or graphics. A seller's adoption of a ... trade dress that is confusingly similar to a competitor's constitutes unfair competition and is actionable under" 15 U.S.C. § 1125(a). International Jensen, Inc. v. Metrosound U.S.A., Inc., --- F.2d ---- (9th Cir. September 13, 1993) (citations and internal quotations omitted).
 
 
 26
 A claim for trade dress infringement requires that the alleged trade dress (1) be nonfunctional, (2) be either inherently distinctive or have acquired a secondary meaning; and (3) be such that its imitation is likely to cause confusion among purchasers. Id.; Two Pesos, Inc. v. Taco Cabana, Inc., --- U.S. ----, 112 S.Ct. 2753, 2758 (1992).
 
 
 27
 We note as an initial matter that the laws protecting trade dress and those providing copyright protection are distinct in scope and purpose, and the fact that Rodesh cannot maintain a copyright action does not foreclose his trade dress claim. The district court's conclusion to the contrary was based on Litchfield v. Spielberg, 736 F.2d 1352, 1357-58 (9th Cir.1984), cert. denied, 470 U.S. 1052 (1985). That decision, however, involved "reverse passing off" of a motion picture, not "passing off" allegations concerning videodiscs. It is inapplicable here.
 
 
 28
 The first trade dress element is nonfunctionality. A feature is functional if it is "essential to the product's use or if it affects the cost and quality of the product." Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1506 (9th Cir.1987).
 
 
 29
 Functional features of a product are "features which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." Id. (internal quotations omitted).
 
 
 30
 We hold that there is a genuine issue of fact concerning this element. Among the features Rodesh alleges as trade dress are the names of the horses, the name of the track (Los Alamitos), and the names of the games.[2] While perhaps such features as the race calls, the finish line, and the race track sound effects may be functional in that they may constitute part of the "actual benefit the consumer wishes to purchase," the same could not be said as a matter of law about features such as the names of the horses, racetrack, and discs. We do not hold that these latter features are nonfunctional (nor, for that matter, that the former features are necessarily functional). What we hold is that a genuine fact question exists at least as to the names of the horses, racetrack, and discs. On remand, the district court should determine which additional features, if any, present genuine questions for trial.
 
 
 31
 We also hold that a fact question exists concerning whether Rodesh's claimed trade dress was distinctive or had acquired a secondary meaning. A product's trade dress is distinctive when it "identifies the particular source of the product or distinguishes it from other products." International Jensen, --- F.2d at ----. Trade dress has a secondary meaning when "the purchasing public associates the ... dress with a single producer or source rather than with the product itself." Id.
 
 
 32
 Rodesh has submitted affidavits in support of the secondary meaning of his asserted trade dress features. Secondary meaning and distinctiveness are normally issues of fact for trial. We do not see the kind of abundant evidence supporting Disctronics' view that would make it appropriate to alter that rule in this case, nor does Disctronics point us to any. Accordingly, this is an issue of fact for trial.
 
 
 33
 Finally, there is the issue of consumer confusion. We again think this is a fact question for trial. We cannot say no reasonable juror would find a likelihood of confusion.
 
 
 34
 The district court's summary judgment on Rodesh's copyright claim is AFFIRMED. The court's summary judgment on the trade dress claim is REVERSED, and the case is remanded for further proceedings consistent with this decision.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Expression which inescapably follows from an idea and which is therefore unprotectable is referred to as "scenes a faire." Data East, 862 F.2d at 208
 
 
 [2]
 Disctronics objects that these features were not alleged as trade dress in Rodesh's complaint. However, the complaint indicated that its list of trade dress features was not exhaustive. We leave it to the district court to determine whether Rodesh must amend his complaint to make his allegations more explicit. If the court decides amendment is required, leave should be granted for Rodesh to do so