NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 12 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JAMES CARR, | No. 19-15408 |
| Plaintiff-Appellant, | D.C. No. 2:17-cv-01539-JAM-AC |
| v. | |
| AUTONATION, INC.; LKQ CORPORATION, | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| JEFFREY DAVIS; WAYNE HUIZENGA, | |
| Defendants. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted February 13, 2020
Pasadena, California

Before: BERZON, R. NELSON, and LEE, Circuit Judges.

James Carr appeals the dismissal of his trade secret claim against AutoNation,

Inc. and LKQ Corporation and the judgment on the pleadings for the contract claim

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

in favor of AutoNation. We have jurisdiction under 28 U.S.C. § 1291, and we review the district court's decisions de novo. *See Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017) (judgment on the pleadings); *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (motion to dismiss). We affirm.

1. <u>Tolling of statute of limitations</u>: Carr has plausibly alleged that the statute of limitations for his claims should be tolled. LKQ is not a consumer-facing company, and we must credit at the pleading stage Carr's assertion that he was no longer involved in the automobile wrecking industry and that he did not learn of LKQ's existence until 2015.

2. <u>Trade secret</u>: Carr failed to plausibly allege that he took reasonable efforts to maintain the secrecy of his business plan when he sent it to (among other people) Wayne Huizenga, the founder of AutoNation. He failed to label the business plan as confidential, and he never told AutoNation that the information was confidential. Nor did he seek a non-disclosure agreement before sending his business plan. Moreover, the business plan on its face does not appear to be something that a reader would reasonably expect to be treated as confidential. Rather, it appears to be a fairly standard business proposal that offers vague, general concepts and merely aspirational language. For such a document, more is needed to preserve confidentiality. *See Clark v. Bunker*, 453 F.2d 1006, 1009–10 (9th Cir. 1972) (explaining that secrecy must exist such that, "except by the use of improper means,

2

there would be difficulty in acquiring the information"); *Motor City Bagels, L.L.C. v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 480 (D. Md. 1999) (court finding no reasonable efforts to maintain secrecy of business plan with a general disclaimer because "[t]he language is not highlighted or isolated so as to put one on immediate notice that the plan constitutes a trade secret that the authors of the plan are actively seeking to protect").

Trade secret law is a two-way street: It protects ideas, but it also requires giving notice that the information is in fact a secret so that others do not fall into a "trap" of using information that they think is non-confidential. *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 708 (7th Cir. 2006) ("Failure to take protective steps also sets a trap, since a company that ferrets out information that the originator does not think special enough to be worth incurring any costs to conceal will have no reason to believe that it *is* a trade secret." (emphasis in original)).

An implied duty of confidentiality is found when the other party has reason to know that the information was in fact confidential. *See* Restatement (Third) of Unfair Competition § 41 cmt. b (Am. Law Inst. 1995) ("[N]o duty of confidence will be inferred unless the recipient has notice of the confidential nature of the disclosure."). AutoNation, however, did not have any such notice.

Because Carr failed to take reasonable efforts to maintain the secrecy of his business plan, neither AutoNation nor LKQ can be liable for trade secret

misappropriation. Whether Carr took reasonable efforts speaks to whether he had a trade secret. Cal. Civ. Code § 3426.1(d)(2); *Buffets, Inc. v. Klinke*, 73 F.3d 965, 969 (9th Cir. 1996) ("[T]he issue of whether security measures were reasonable pertains to the preliminary question of whether the material is in fact a trade secret."). And, as there was no trade secret for AutoNation to misappropriate, LKQ cannot be liable for misappropriation of a trade secret, either.

3. Breach of contract implied-in-fact: Carr's breach of contract implied-in-fact claim also fails. We have held that, under California law, "no contract may be implied where an idea has been disclosed not to gain compensation for that idea but for the sole purpose of inducing the defendant to enter a future business relationship." *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 902 (9th Cir. 1987) (internal quotation marks omitted). "If disclosure occurs before it is known that compensation is a condition of its use, . . . no contract will be implied." *Id.* (internal citation omitted).

Carr's complaint and supporting documents show that Carr was seeking investment, not offering the business plan for sale. Though Carr argues that this case is similar to *Gunther-Wahl Productions, Inc. v. Mattel, Inc.*, 104 Cal. App. 4th 27 (2002), Carr points to no similar industry custom to show that AutoNation understood that he was selling an idea rather than seeking a continuing business relationship. *See* 104 Cal. App. 4th at 30, 40. Though Carr also alleges that the

4

context made clear that he expected compensation, his allegations are conclusory. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (refusing to take conclusory allegations as true).

    **AFFIRMED.**