**LANARD TOYS LIMITED;**
**and Lanard Toys, Inc.,**
**Plaintiffs,**

v.

**NOVELTY INC.; et al., Defendants.**

**No. CV–05–8406 CAS (JWJx).**

United States District Court,
C.D. California,
Western Division.

Feb. 8, 2007.

Craig J. Mariam, Lindsay J, Hulley, Maha Sarah, Matthew T. Sinnott, Richard P. Sybert, Susan B. Meyer, Gordon and Rees, San Diego, CA, for Plaintiffs.

Dennis S. Schell, Kevin Boyle, Paul B. Overhauser, Overhauser Law Offices, Greenfield, IN, Gregg A. Rapoport, Lee and Rosenberger, Pasadena, CA, for Defendants.

ORDER DENYING PLAINTIFFS' MO-
TION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING IN PART
AND DENYING IN PART DEFEN-
DANTS' MOTION FOR SUMMARY
JUDGMENT, AND DENYING DE-
FENDANTS' MOTION TO TRANS-
FER VENUE

CHRISTINA A. SNYDER, District Judge.

## I. INTRODUCTION

The present action seeks recovery for the alleged infringement of copyrights in violation of 17 U.S.C. § 101. *et seq.*, infringement of trade dress in violation of 15 U.S.C. § 1125(a), and related claims for relief. Plaintiffs Lanard Toys Limited ("Lanard Ltd.") and Lanard Toys, Inc. ("Lanard Inc.") are in the business of designing, manufacturing, marketing, and selling children's toys and products. First Amended Complaint ("FAC") ¶ 5. Defendant Novelty Inc. ("Novelty") is in the business of supplying products to convenience stores. *Id.* ¶ 6. Defendant Exxon-Mobil Oil Corporation (erroneously sued as Exxon Mobil Corporation) ("Exxon"), among other things, owns and operates service stations and convenience stores across the United States. *Id.* ¶ 13.

Plaintiffs allege that they own the intellectual property rights, including trade dress and copyright, associated with a product line of flying toys called "Prop Shots," which includes plaintiffs' "Drop Copter," "Wild Copters," "Stunt Plane," and "High Flyers" toys. *Id.* ¶¶ 18–21. Plaintiffs allege that defendants intentionally infringed plaintiffs' intellectual property rights in the "Drop Copter," through the sale and offering for sale of Novelty's "Shoot Copter" toys, which plaintiffs allege are "knockoffs" of plaintiffs' proprietary toy and packaging. *Id.* ¶ 28. In addition, plaintiffs allege that defendants infringed specific elements of the distinctive design of each of plaintiffs' "Wild Copters," "Stunt Plane," and "High Flyers" toys through the sale and offering for sale of Novelty's "Pull–N–Launch Plane Set" toy. *Id.* ¶¶ 37. Plaintiffs allege that defendant Exxon has offered the infringing "Pull–N–Launch Plane Set" toy for sale at various of its service stations and/or convenience stores, including a convenience store in Oxnard, California. *Id.* ¶ 38. Plaintiffs further allege that defendants' infringing toys "are of inferior quality and pose a safety risk to small children," and that "for this reason are potentially particularly damaging to Lanard and its hard-won reputation for quality and safety." *Id.* ¶ 46.

On November 30, plaintiffs filed suit against defendants, alleging claims for (1) trade dress infringement, pursuant to 15 U.S.C. § 1125(a); (2) common law trade dress infringement; (3) copyright infringement, pursuant to 17 U.S.C. § 101, *et seq.;* and (4) state law unfair competition, pursuant to California Business & Professions Code § 17200, *et seq.*[1] Plaintiffs seek declaratory and injunctive relief, an accounting, compensatory and punitive damages, interest, and attorneys' fees and costs.

On November 15, 2006, plaintiffs filed a motion for partial summary judgment.[2] Defendants filed their opposition on December 4, 2006. Plaintiffs filed a reply on December 11, 2006.

---

1. Plaintiffs have subsequently clarified that Lanard Inc. does not allege claims for copyright and trade dress infringement.

2. Plaintiffs also filed a request for judicial notice as to the Ownership Declaration of James Hesterberg filed on May 9, 2006, as well as the design drawings filed under seal on May 9, 2006. The Court may consider previous filings in this case without judicially noticing them. The Court therefore finds it unnecessary to judicially notice these documents, and hereby DENIES defendants' request for judicial notice as moot.

■ On November 28, 2006, defendants filed a motion for summary judgment and for transfer of venue to the Southern District of Indiana.[3] Plaintiffs filed an opposition on December 4, 2006,[4] and thereby cross-moved for summary judgment. On December 11, 2006, defendants filed a reply.[5]

The Court heard oral argument on December 18, 2006. At the hearing, the Court granted leave to the parties to file supplemental briefs, not to exceed five pages in length, to enable plaintiffs to address the Court's concerns regarding design drawings of the "Wild Copters" toy. Plaintiffs filed their brief on December 21, 2006. Defendants filed their brief on January 12, 2007.[6] Having carefully considered the parties' arguments, the Court hereby finds and concludes as follows:

## II. BACKGROUND

Plaintiff Lanard Ltd. promotes and sells a product line known as the "Prop Shots" line of flying toys. Declaration of James W. Hesterberg, November 15, 2006 ("Hesterberg Decl. Nov. 15, 2006") ¶ 4. Included in plaintiffs' "Prop Shots" line of flying toys are plaintiffs' "Drop Copter," "Wild Copters," "Stunt Plane," and "High Flyers" toys, which are the toys at issue in the present action. *Id.* ¶ 7.

According to plaintiffs, at least as early as 1982, plaintiffs acquired and began using the "Prop Shots" trademark to identify its toy products, and since that time, plaintiffs have promoted and sold its "Prop Shots" flying toys to mass market retailers and specialty retailers throughout the United States. *Id.* ¶¶ 3, 5. Defendants dispute this fact, and contend that plaintiff Lanard Ltd. does not directly "do busi-

3. Defendants also filed a request for judicial notice as to defendants' motion to transfer venue filed October 13, 2006, and defendants' reply to plaintiffs' opposition to the motion to transfer venue. The Court may consider previous filings in this case without judicially noticing them. The Court therefore finds it unnecessary to judicially notice these documents, and hereby DENIES defendants' request for judicial notice as moot.

4. Plaintiffs also filed evidentiary objections to the declarations of Todd Green, Mike Kent, Brian Stidham, and David Taylor submitted by defendants in support of defendants' motion for summary judgment. The Court addresses *infra* plaintiffs' objections to evidence upon which the Court relies. All other evidentiary objections are OVERRULED as moot.

5. Defendants object to plaintiffs' cross-motion for summary judgment, and argue that it is procedurally improper. District courts "possess the power to enter summary judgment *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548. Where one party moves for summary judgment and·at the hearing the court determines there is no genuine issue of material fact and the opposing party is enti-

tled to judgment as a matter of law, *sua sponte* judgment in favor of the opposing party is appropriate so long as the losing party "had a full and fair opportunity to ventilate the issues involved in the motion." *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311–12 (9th Cir.1982). In light of the Court's power to grant summary judgment *sua sponte,* and defendants' opportunity to fully ventilate the issues involved in the motion, the Court OVERRULES defendants' objection.

Defendants also filed objections to plaintiffs' proffered summary judgment evidence on December 11, 2006. Defendants argue that plaintiffs have submitted, as exhibits to the declaration of Craig Mariam, excerpts from declarations that have not been signed under penalty of perjury. The Court addresses *infra* plaintiffs' objections to evidence upon which the Court relies. All other evidentiary objections are OVERRULED as moot.

6. In their supplemental brief, defendants include new arguments which were not previously raised by defendants, including arguments regarding plaintiffs' trade dress claims. The Court did not grant defendants leave to brief new issues regarding the instant motions for summary judgment. The Court will therefore not consider these arguments.

ness" in the United States. Defendants' Statement of Genuine Issues in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("DSGI") ¶ 4; Supplemental Decl. of Gregg Rapoport, December 4, 2006 ("Rapoport Decl. Dec. 4, 2006"), Ex 1, 59:4–23.

Plaintiffs have obtained the following United States Copyright registrations, registered in the name of Lanard Inc., effective November 2005:

1. Mini–Launch Drop Copter (toy sculpture), Reg. No. VA 1–324–991

2. Mini–Launch Drop Copter (toy packaging), Reg. No. VA 1–325–025

3. Mini–Launch Wild Copters (toy sculpture), Reg. No. VA 1–324–987

4. Mini–Launch Wild Copters (toy packaging), Reg. No. VA 1–324–986

5. Mini–Launch Stunt Plane (toy sculpture), Reg. No. VA 1–324–989

6. Mini–Launch Stunt Plane (toy packaging), Reg. No. VA 1–324–988

7. High Flyers (toy sculpture), Reg. No. VA 1–324–990

8. High Flyers (toy packaging), Reg. No. VA 1–324–026

Hesterberg Decl. Nov. 15, 2006, Exs. B–T.[7]

Plaintiffs also submit prior copyright registrations for Mini–Launch Wild Copters (toy sculpture), a.k.a. Mini Prop Shots Helicopters, Reg. No. VA 656–310, and Mini–Launch Wild Copters (toy packag-

ing), Reg. No. TX 3–870–940, both registered on October 14, 1994 by Lanard Ltd. *Id.,* Ex. E, I.

According to the United States Copyright registrations, the date of first publication for plaintiffs' toys and packaging are as follows:

1. Mini–Launch Drop Copter (toy sculpture): November 6, 1995

2. Mini–Launch Drop Copter (toy packaging): December 31, 2002

3. Mini–Launch Wild Copters (toy sculpture): November 30, 1993

4. Mini–Launch Wild Copters (toy packaging): January 18, 2002

5. Mini–Launch Stunt Plane (toy sculpture): February 2, 1995

6. Mini–Launch Stunt Plane (toy packaging): October 2, 1998

7. High Flyers (toy sculpture): December 24, 1991

8. High Flyers (toy packaging): January 6, 2003

*Id.* Exs.B–T.

The first dates of publication for plaintiffs' prior versions of the Mini–Launch "Wild Copters" toy and packaging are alleged to be November 30, 1993, and January 1, 1992, respectively. *Id.,* Ex. E, 1.

On November 21, 2005, Lanard Inc. assigned its intellectual property rights to

---

**7.** In their opposition to plaintiffs' motion for partial summary judgment, defendants object that certain copyright registrations were not produced by plaintiffs in a timely manner. Plaintiffs' reply states that all copyright registrations were served on defendants prior to the close of discovery. In light of the Court's decision on the motions at issue, the Court need not consider whether the copyright registrations were produced in a timely fashion, with the exception of the "Wild Copters" toy registration, which is considered below.

Defendants also contend that the copyright registrations of plaintiffs' "High Flyers" toy and packaging should be stricken because plaintiffs failed to produce the "High Flyers" toy at the depositions of plaintiffs' corporate representatives at the offices of Gordon & Rees. Plaintiffs respond that the previously deposited version of the "High Flyers" toy was misplaced in the transfer of the toys between the offices of plaintiffs' counsel and the Court. Plaintiffs contend that the 2006 version of the "High Flyers" toy, which is identical to the 2005 version, was available at the depositions of Lanard's corporate representatives. Based on the representation of plaintiffs' counsel, the Court DENIES defendants' request to strike the copyright registrations at this time.

the "Drop Copter," "Wild Copters," "Stunt Plane," and "High flyers" toys and toy packaging to Lanard Ltd. The agreement between the parties states that Lanard Inc. "hereby assigns, transfers and sets over unto Lanard Toys, Ltd., a Hong Kong corporation, all right, title and interest in and to said trade dresses and copyrights, together with the goodwill of the business in connection with which said trade dresses and copyrights are used." *Id.*, Ex. U.

Lanard Ltd. alleges that defendants' "Shoot Copter," "Super Plane," and "Pull–N–Launch Plane Set" products infringe its copyrights in the above mentioned toys. Defendants contend that they began selling the "Shoot Copter" on March 28, 2005, and began selling the "Pull–N–Launch Plane Set" on July 4, 2005. Plaintiffs' Statement of Genuine Issues in Opposition to Defendants' Motion for Summary Judgment ("PSGI") ¶ 14. Although Lanard Ltd. objects to this statement, Lanard Ltd. apparently offers no evidence regarding the dates that defendants' sales commenced. *Id.* ¶. Plaintiffs contend that defendants have thwarted the discovery process, and none of defendants' depositions have yet been taken to determine this issue. *Id.*

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. 2548 *See also Abromson v. American Pacific Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

### IV. DISCUSSION

Defendants move for summary judgment on each of plaintiffs' claims. Plain-

tiffs move for summary judgment as to their ownership of the copyrights at issue, the availability of attorneys' fees under the copyright infringement claim, the issue of substantial similarity of the toys and packaging under the copyright infringement claim, the issue of likelihood of confusion of the parties' trade dresses, and the issue of functionality of the toys.

### A. Claims Asserted by Lanard Inc.

Defendants contend that Lanard Inc. has "abandoned" its copyright and trade dress claims, and therefore Lanard Inc. cannot maintain a claim for unfair competition based upon copyright and trade dress infringement. Defendants rely upon plaintiffs' "Notice Regarding Plaintiffs' Claims and Damages," filed November 1, 2006, which states that Lanard Inc. "does not allege a claim for copyright or trade dress infringement against Defendants; instead these claims are asserted solely by Lanard Toys Limited."

Plaintiffs argue that Lanard Inc. did not "abandon" these claims, but rather clarified that Lanard Inc. does not allege claims for copyright and trade dress infringement. Plaintiffs assert that Lanard Inc. alleges a claim for unfair competition, and that Lanard Inc. did not "abandon" this claim.

In its November 6, 2006 order, the Court considered a similar argument from defendants. The Court noted that "[w]hether or not Lanard Toys, Inc. chooses to pursue a copyright or trade dress infringement claim, Lanard Toys, Inc. may pursue a claim for unfair competition based upon alleged copyright and trade dress infringement that occurred prior to the assignment [of Lanard Inc.'s intellectual property rights] to Lanard Toys, Limited." It does not appear to the Court that Lanard Inc. has chosen not to pursue its claim for unfair competition.

The Court therefore DENIES defendants' motion for summary judgment as to this issue.

### B. Unfair Competition

██ Defendants argue that plaintiffs cannot maintain a claim for unfair competition because defendants do not "compete" with either plaintiff, and that Lanard Inc. lacks standing to bring such a claim. California Business & Professions Code § 17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." The unfair competition law's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Rubin v. Green,* 4 Cal.4th 1187, 1200, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993) (internal quotation marks and citation omitted). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999) (internal quotation marks and citation omitted) (applying a more stringent definition of the word "unfair" in suits between direct competitors, but not indicating that the parties must be direct competitors for the unfair competition law to apply). Section 17204 provides that a claim for unfair competition can be maintained "by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition."

██ Section 17200 does not require a plaintiff to establish that the defendant directly competes with plaintiff. A practice that otherwise violates a law, such as trade dress infringement, can support a claim for unfair competition under Califor-

nia law. Further, there is no indication that Lanard Inc. must bring an independent claim for trade dress infringement in addition to a claim for unfair competition.

The assignment of a trademark carries no right to sue for past infringement. *George W. Luft Co. v. Zande Cosmetic Co.*, 142 F.2d 536, 541 (2d Cir.1944). However, a contract that conveys all of one parties' assets to another includes existing claims for trademark infringement. *Id.* The assignment of Lanard Inc.'s intellectual property rights to Lanard Ltd. states that Lanard Inc. "hereby assigns, transfers and sets over unto Lanard Toys, Ltd., a Hong Kong corporation, all right, title and interest in and to said trade dresses and copyrights, together with the goodwill of the business in connection with which said trade dresses and copyrights are used." Hesterberg Decl., Nov. 15, 2006, Ex. U. It appears that Lanard Inc. conveyed its rights to the trade dresses at issue, but did not convey all of Lanard Inc.'s assets to Lanard Ltd. Lanard Inc. therefore retained any existing claims for trade dress infringement, which Lanard Inc. has standing to assert as the basis of its unfair competition claim.

Defendants also raise the argument that plaintiffs' claim for unfair competition is preempted insofar as it is based upon copyright infringement. Although the Court noted in its November 6, 2006 order that Lanard Inc. may maintain a claim for unfair competition based upon copyright infringement, neither party raised the issue of preemption until the instant motions for summary judgment.

"The Ninth Circuit employs a two-part test to determine whether the [Copyright] Act preempts particular state law claims. Preemption occurs when: (1) the work at issue comes within the subject matter of copyright and (2) the rights granted under state law are 'equivalent to any of the exclusive rights within the general scope of copyright' set forth in the Act." *Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053, 1057 (C.D.Cal.2000)(quoting *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987)). To avoid preemption, a state cause of action "must protect rights which are qualitatively different from" rights protected by the federal Copyright Act, or "must have an 'extra element' which changes the nature of the action." *Del Madera Properties*, 820 F.2d at 977, overruled on other grounds, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

According to the Ninth Circuit, to the extent that a claim for unfair competition is not qualitatively different from a copyright claim, it is preempted by federal copyright law. *See Fisher v. Dees*, 794 F.2d 432 (9th Cir.1986). This principle applies even where a plaintiff's claim under the Copyright Act fails. *See Selby v. New Line Cinema Corp.*, 96 F.Supp.2d at 1058–59 ("[T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection.") (quoting *United States Ex Rel. Berge v. Board of Trustees of Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir.1997)).[8] Thus, in distinction to plaintiffs' claim for unfair competition based upon trade dress infringement,

---

8. Plaintiffs argue in their supplemental brief that "[b]ecause Lanard Toys, Inc. could not have properly brought a claim for copyright infringement of its parent corporation's copyrights, such a claim is not preempted by the Copyright Act." Supplemental Brief at 2. However, Lanard Inc. has standing to pursue a claim for infringement of the copyrights that occurred before it assigned those copyrights to Lanard Ltd. The fact that Lanard Inc. has chosen not to pursue those copyright claims does not mean that Lanard Inc.'s unfair competition claim falls outside of the scope of preemption.

plaintiffs may not allege a claim for unfair competition based on defendants' alleged infringement of its copyright. Defendants' motion for summary judgment is GRANT-ED as to plaintiffs' claim for unfair competition based upon copyright infringement, and DENIED as to plaintiffs' claim for unfair competition based upon trade dress infringement.

## C. Copyright Infringement

▮▮▮▮ To establish copyright infringement, plaintiffs have the burden of showing that (1) they own the allegedly infringed works, and (2) defendants copied protected expression from plaintiffs' works without authorization. *Smith v. Jackson,* 84 F.3d 1213, 1218 (9th Cir.1996). The second prong, copying, is demonstrated by showing (1) circumstantial (or other) evidence of defendants' access to the protected works, and (2) substantial similarity between the copyrighted and accused works. *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1043 n. 2 (9th Cir.1994).

### 1. Ownership

Copyright in a work "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title". 17 U.S.C. § 201(b). An exclusive licensee has standing to sue for "any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

### a. Prima Facie Evidence of Validity

"In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).

According to the information provided on the certificates of registration, the certificates were made within five years after first publication with regard to the packaging of plaintiffs' "Drop Copter," "Wild Copters," and "High Flyers" toys. Hesterberg Decl. Nov. 15, 2006, Exs. B–T. As to the packaging of plaintiffs' "Stunt Plane" and all of the allegedly infringed toys, with the exception of the "Wild Copters" toy to be discussed below, the certificates were made after five years. *Id.*

▮▮▮ In its March 16, 2006 order granting in part and denying in part plaintiffs' motion for preliminary injunction, the Court concluded that plaintiffs had not established ownership of the copyrights as to any of the allegedly infringed toys because the copyrights in these toys were registered more than five years after first publication. *See* March 16, 2006 Order at 12. Plaintiffs now argue that Lanard Ltd. has established ownership of the copyrights to the "Wild Copters," "High Flyers," and "Stunt Plane" toys through submission of detailed design drawings of the toys, as well as an assignment of copyright rights by Lanard Inc. to Lanard Ltd. As to the "Drop Copter" toy, plaintiffs submit an exclusive license of the copyright to the "Drop Copter" toy by Frank Bartleucci to Lanard Ltd. Hesterberg Decl. Nov. 15, 2006, Ex. A.

The detailed design drawings submitted by plaintiffs under seal constitute sufficient evidence of Lanard Inc.'s ownership of the copyrights to the "High Flyers" and "Stunt Plane" toys at the time the copyright registrations to these toys were filed in November 2005. Ownership Decl. of James Hesterberg, May 9, 2006, Exs. C, D. In its tentative order, the Court noted that the design drawings provided as to

the "Wild Copters" toy featured drawings of large propellers did not appear to pertain to the "Wild Copters" toy. Plaintiffs asserted, at oral argument, that the omission of the design drawings was a mistake, and submitted the correct design drawings with their supplemental brief. *See* Decl. of James Hesterberg, December 19, 2006, Ex. A.

Plaintiffs also contend that the "Wild Copters" toy was first published on November 30, 1993, was first registered on October 14, 1994, and that the identical toy was registered again in November 2005. Plaintiffs assert that the 1994 registration provides *prima facie* evidence of its ownership of the "Wild Copters" copyright. In its tentative order, the Court noted that plaintiffs provided no explanation as to why the "Wild Copters" toy was registered for a second time in 2005, and why plaintiffs' supplementary registration, filed to correct their 2005 registration, claimed that the work registered in 2005 is a derivative work of the work registered in 1994. In their supplemental brief, plaintiffs assert that the 2005 registration, and subsequent supplementary registration, were filed in error. Plaintiffs state that they have "spoken with the Copyright Office as to the proper procedure to correct the misstatement, and [have] prepared a second supplemental registration that will state that the subject of the 2005 registration is identical to the subject of the 1994 registration. The new supplemental registration will be filed with the Copyright Office without delay." Plaintiffs' Supplemental Brief at 3. Based upon plaintiffs' supplemental brief, it appears to the Court that plaintiffs have provided sufficient evidence of ownership of the "Wild Copters" toy based upon the registration filed by Lanard Ltd. in 1994. The Court therefore need not rely upon the design drawings submitted in plaintiffs' supplemental brief with the declaration of James Hesterberg, and defendants' objections to the declaration of James Hesterberg are hereby OVERRULED as moot.

However, defendants contend that plaintiffs failed to produce the 1994 "Wild Copters" copyright registration, VA–656–310, before the close of discovery. Plaintiffs respond that they did in fact produce a copy of the registration on September 20, 2006, prior to the close of discovery. In light of the dispute between the parties regarding this issue, the Court grants leave to defendants to conduct limited discovery regarding the 1994 "Wild Copters" copyright registration. Defendants shall have 60 days to complete such discovery. Defendants must specify what discovery they intend to seek regarding the registration. In any event, the Court will not strike the 1994 "Wild Copters" copyright registration based upon plaintiffs' alleged failure to produce the registration prior to the close of discovery.

Plaintiffs contend that "[t]here does not appear to be any dispute that Lanard designed the STUNT PLANE™ packaging as well; however, Mr. Hesterberg, Lanard's managing director, has also stated that Lanard designed the circa 2005 packaging for the STUNT PLANE™." Plaintiff's Motion for Partial Summary Judgment at 12. Defendants contend that Lanard Inc., as opposed to Lanard Ltd., designed this packaging. In any event, it appears that defendants concede that Lanard Inc. designed the "Stunt Plane" packaging, and therefore Lanard Inc. has established ownership of this copyright at the time it was registered.

### b. Standing

The copyrights at issue, with the exception of the 1994 registration of the "Wild Copters" toy, were registered by Lanard Inc. Lanard Inc. thereafter assigned its intellectual property rights to the "Drop Copter," "Stunt Plane," and "High Flyers"

toys and toy packaging to Lanard Ltd. on November 21, 2005. The agreement states that Lanard Inc. "hereby assigns, transfers and sets over unto Lanard Toys, Ltd., a Hong Kong corporation, all right, title and interest in and to said trade dresses and copyrights, together with the goodwill of the business in connection with which said trade dresses and copyrights are used." Hesterberg Decl. Nov. 15, 2006, Ex. U. Thus, the copyrights previously registered by Lanard Inc. for the toys and packaging at issue may be enforced by Lanard Ltd., the assignee of the copyrights.

"Only the copyright owner, or the owner of exclusive rights under the copyright, as of the time the acts of infringement occur, has standing to bring an action for infringement of such rights." Nimmer on Copyright § 12.02[B]. A grant of copyright, even if it purports to convey "all right, title and interest," is generally construed not to assign existing causes of action unless such causes of action are expressly included in the grant. *Id.* The assignment between Lanard Inc. and Lanard Ltd. does not expressly convey Lanard Inc.'s existing claims for infringement. Plaintiffs have clarified that Lanard Inc. does not allege a claim for copyright infringement. Thus, Lanard Ltd. has standing assert a claim for copyright infringement of the "Drop Copter," "Stunt Plane," and "High Flyers" toys only as to infringement that occurred after November 21, 2005, the date of the assignment.

██ Plaintiffs also argue that, regardless of the assignment, Lanard Ltd. can assert the intellectual property rights of Lanard Inc because they are "related companies." Plaintiff cites *May Dep't Stores Co. v. Prince,* 200 U.S.P.Q. 803 (Trademark Tr. & App. Bd.1978) for the proposition that "use by a controlled subsidiary inures to the benefit of the parent corporation" under the "related company rule." Plaintiffs' Opp'n at 7. However, the "related company rule" appears to be a principle of trademark law, rather than copyright.[9] Plaintiffs cite no cases that have applied a similar rule to the ownership of a copyright. The "related company rule" does not appear to have any application in copyright law.

Defendants make several further arguments as to why plaintiffs cannot establish that ownership of valid copyrights in the toys and packaging at issue. The Court will address each of defendants' arguments in turn.

### c. Lanard Inc.'s Responses to Interrogatories

██ Defendants argue that Lanard Ltd. does not in fact own the copyrights at issue. Rather, defendants allege that, in response to interrogatories, Lanard Inc. stated that it owns the copyrights at issue. Interrogatory no. 3 to Novelty, Transportation, Inc.'s first set of interrogatories asked, "For the intellectual property rights alleged in the Complaint to have been infringed, identify the rights that are owned by you, and state how your ownership of such rights arose." Lanard Inc. responded that "Responding Party owns all copyrights and trademarks in the subject products." Decl. of Paul Overhauser,

---

**9.** Section 5 of the Lanham Act, 15 U.S.C. § 1055, provides that "[w]here a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public." A "related company" is defined as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 15 U.S.C. § 1127.

Ex. 1. Defendants argue that plaintiffs are judicially estopped from contradicting Lanard Inc.'s response to this interrogatory by claiming that Lanard Ltd. owns the copyrights at issue.

 Plaintiffs apparently do not contest that they responded to interrogatory no. 3 as they did. Instead, plaintiffs point to Lanard Inc.'s assignment of intellectual property rights to Lanard Ltd. in November 2005, in support of Lanard Ltd.'s assertion that it owns the copyrights at issue. Plaintiffs do not attempt to explain Lanard Inc.'s response to interrogatory no. 3. A party may not create an issue of genuine fact by submitting affidavits that conflict with prior answers to interrogatories. *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir.1993). However, before granting summary judgment on the basis of a contradiction between an interrogatory and subsequent affidavit, a district court must make a factual determination that the contradiction is a "sham," in other words that the contradiction was not "the result of an honest discrepancy, a mistake, or the result of newly discovered evidence." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir.1991).

It appears to the Court that Lanard Inc. mistakenly identified itself as the owner of the copyrights at issue. In other interrogatory responses, such as Lanard Inc.'s response to interrogatory no. 3 of Novelty, Wholesale, Inc.'s first set of interrogatories, Lanard Inc. states that "[a]n assignment agreement between Plaintiffs has been produced." Decl. of Paul Overhauser, November 26, 2006 ("Overhauser Decl.

Nov. 26, 2006"), Ex. 2. Thus, plaintiffs have not submitted "sham" evidence for the purpose of avoiding summary judgment. The Court DENIES defendants' motion for summary judgment as to this issue.

### d. Fraud on the Copyright Office

 Defendants also allege that plaintiffs' copyright registrations for the "Drop Copter" toy and packaging are invalid because plaintiffs failed to indicate the true author of the works on the applications, or indicate that the toys and packaging are derivative works. Defendants make similar arguments as to plaintiffs' other toys and packaging. Plaintiffs have apparently filed supplementary registrations to correct the information in the original registrations. *See* Hesterberg Decl. Nov. 15, 2006, Exs. B–T. Generally, errors or misstatements contained in an application for registration will invalidate the subject copyright only where the work in question would not have been eligible for copyright had the registration application contained a correct statement of the facts. Nimmer on Copyright § 7.20[B]. Such mistakes as the erroneous identification of the author of the work, and the failure to disclose that the work is derivative, have been found to be insufficient to invalidate a copyright. *Id.*

Here, it appears that the toys and packaging would likely have been registered even if plaintiffs had indicated the correct author and had noted the fact that several works were derivative. Defendants present no evidence to suggest that the Copyright Office would not have registered the works.[10] On the record before it, the

---

**10.** This statement may not be entirely accurate as to the 2005 "Wild Copters" toy copyright registration. Plaintiffs' misrepresentation in the 2005 registration that the toy had not previously been registered could invalidate the 2005 registration. Had the Copyright Office known that the identical work was previously registered in 1994, the Copy-

right Office would not have issued the new registration absent sufficient explanation by plaintiffs that such registration was appropriate. However, plaintiffs have notified the Copyright Office of this discrepancy, and in any event, it appears that plaintiffs no longer

Court concludes that plaintiffs' apparent errors in the copyright registrations at issue do not invalidate the copyrights.

### e. Reversion of "Drop Copter" Copyright

Defendants also allege, in their opposition to plaintiff's motion for partial summary judgment, that Lanard Ltd.'s exclusive rights to the "Drop Copter" toy have reverted to Bartleucci, the licensor, because Lanard Ltd. has failed to sell "reasonably commercial quantities" as required under the exclusive licensing agreement. The licensing agreement between Bartleucci and Lanard Ltd. states that "[t]his agreement shall continue so long as [Lanard Ltd.] sells the Product [or Drop Copter] in reasonably commercial quantities, unless sooner terminated under the terms of this agreement or by mutual written consent." Hesterberg Decl. Nov. 15, 2006, Ex. A ¶ 17. At deposition, Hesterberg testified that a reasonable commercial quantity would likely not be less than 10,-000 units per year. Decl. of Gregg Rapoport, November 26, 2006 ("Rapoport Decl. Nov. 26, 2006"), Ex. 1, 46:2–48:11. Defendants contend that plaintiffs did not sell the "Drop Copter" from December 2002 to October 2005. Supplemental Decl. of Paul Overhauser, December 3, 2006 ("Overhauser Decl. Dec. 3, 2006"), Ex. 14.

Defendants are strangers to the licensing agreement between Bartleucci;and Lanard Ltd. Thus, it is unclear to the Court that defendants have standing to assert that Lanard Ltd. is in violation of its licensing agreement. Further, the declaration of James Hesterberg states that Lanard has continued to sell reasonable commercial quantities through the date of the declaration, November 15, 2006. Hesterberg Decl. Nov. 15, 2006 ¶ 8. The Court is therefore unpersuaded by defendants' argument. The Court therefore rely upon the 2005 copyright, such that the

DENIES defendants' motion for summary judgment as to this issue.

### f. Whether the Toys are Useful Articles

Only those toys which qualify as pictorial, graphic or sculptural works are subject to copyright protection. *See* 1–2 Nimmer on Copyright § 2.18(H)(1). Pictorial, graphic or sculptural works include "two-dimensional and three-dimensional works of fine, graphic and applied art, photographs, prints, and art reproductions, maps, globes, charts, diagrams, models and technical drawings, including architectural plans." 17 U.S.C. § 101. However, if the work has "an intrinsic utilitarian function that is not merely to portray the appearance of the article," the work is not protected by copyright law unless "such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. 101.

 Defendants argue that plaintiffs' toys are not entitled to protection under copyright because their form is dictated by their function of flying through the air. Plaintiffs respond that the toys are not useful articles because they have no function other than to portray real airplanes and helicopters "in flight." Plaintiffs' Opp'n at 18. Plaintiffs rely on the Sixth Circuit's decision in *Gay Toys, Inc., v. Buddy L. Corp.*, 703 F.2d 970 (6th Cir. 1983), that a toy airplane is not a useful article because "other than the portrayal of a real airplane, a toy airplane, like a painting, has no intrinsic utilitarian function." 703 F.2d at 973. In *Gay Toys, Inc.*, the Sixth Circuit reversed a district court's holding that a toy airplane was not protected because "children need toys for

claimed fraud has ceased to be an issue.

growing up and that a 'toy airplane is useful and possesses utilitarian and functional characteristics in that it permits a child to dream and to let his or her imagination soar.' " *Id.* The Sixth Circuit disagreed with the district court, noting that the district court's interpretation of "useful article" would swallow the general rule. The court held that toys are copyrightable because "toys do not even have *an* intrinsic function other than the portrayal of the real item." *Id.* at 974 (emphasis in original).

The Court concludes that plaintiffs' "Stunt Plane" and "High Flyers" toys are likely not useful articles because they portray real airplanes or helicopters. Plaintiffs' "Drop Copter" toy, "Wild Copters" launcher, and "Stunt Plane" launcher, however, bear no resemblance to actual helicopters or airplanes. With plaintiffs' "Drop Copter," the use of the term "copter" to describe the toy is purely figurative. The "Drop Copter" appears to be useful in that its design enables it to shoot high into the air like a sling shot, separate into two parts in mid-flight, and spin to the ground. Indeed, it appears to be designed specifically to achieve this function, not to portray the appearance of a helicopter or airplane in flight. Likewise, the "Wild Copters" and "Stunt Plane" launchers have the utilitarian function of launching the toy airplanes into the air. Further, contrary to plaintiffs' argument, a launcher does not necessarily escape the label of useful article because it "participates in the portrayal of the real object [an airplane] and is not useful for anything else." Plaintiffs' Opp'n at 18. Rather, the launchers are arguably "useful" specifically because they launch the toys into the air. A reasonable jury could find that the launchers are not intended to merely portray their own appearance. As such, these toys are distinguishable from the toy airplanes in *Gay Toys, Inc.*

Further, there appear to be no "pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects" of the "Drop Copter" toy, "Wild Copters" launcher, and "Stunt Plane" launcher apart from the graphics decorating the toys, which plaintiffs apparently do not contend to be substantially similar to the graphics on defendants' toys. Each feature of plaintiffs' "Drop Copter," "Wild Copters" launcher, and "Stunt Plane" launcher arguably has a utilitarian purpose. *See Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211 (9th Cir.1997) ("[A]ny aspects of [plaintiff's] costumes that are purely functional, utilitarian or mechanical, will not be given any copyright protection."). Each feature of the "Drop Copter" appears to function to allow its use as a sling-shot type device to launch the toy into the air. The handles with "indented channels" on the "Stunt Plane" and "Wild Copters" launchers function to allow a child to grip the device. The "launch pads" of the "Wild Copters" launcher and "Stunt Plane" launcher appear to perform the utilitarian function of securing the toy airplanes for launch.[11]

However, a genuine issue of material fact exists as to whether the "Drop Copter," "Wild Copters" launcher, and "Stunt Plane" launcher perform intrinsic utilitari-

---

11. Defendants submit the declaration of Todd Green, the President of Novelty, Inc., to the effect that plaintiffs' toys are functional. Decl. of Todd Green ¶ 14. Plaintiffs object to Green's declaration on the grounds that Green is not qualified as an expert on toy design, and may not make legal conclusions.

The Court does not rely upon the declaration of Todd Green in coming to its conclusion that a genuine issue of material fact exists as to whether the "Drop Copter" and "Stunt Plane" launcher are useful articles. The Court therefore OVERRULES plaintiffs' objections as moot.

an functions, and therefore are useful articles. Viewing the evidence in the light most favorable to plaintiffs, a reasonable jury could conclude that plaintiffs'. "Drop Copter" toy, "Wild Copters" launcher, and "Stunt Plane" launcher are not useful articles. Accordingly, defendants' motion for summary judgment is DENIED as to plaintiffs' claims for copyright infringement regarding the "Drop Copter" toy, "Wild Copters" launcher, and "Stunt Plane" launcher. Plaintiffs' cross-motion for summary judgment is likewise DENIED as to ownership of the copyrights in the "Drop Copter" toy, "Wild Copters" launcher, "Stunt Plane" launcher.[12]

The Court concludes that plaintiffs have established ownership of a valid copyright in the "Stunt Plane" and "High Flyers" toy airplanes, and in the "Drop Copter," "High Flyers," "Stunt Plane," and "Wild Copters" packaging. The Court GRANTS plaintiffs' motion for summary judgment as to the ownership of the copyrights in these toys and packaging, and DENIES defendants' motion as to the ownership of these toys.

### 2. Copying

■ As noted above, copying is demonstrated by showing (1) circumstantial (or other) evidence of defendants' access to the protected work, and (2) substantial similarity between the copyrighted and accused works. Defendants argue that plaintiffs have not established that defendants had access to plaintiffs' copyrighted toys.

Access may be found if a plaintiff's work has been widely disseminated. Nimmer on Copyright § 13.02[A]. According to

plaintiffs, at least as early as 1982, plaintiffs acquired and began using the "Prop Shots" trademark to identify its toy products, and since that time, plaintiffs have promoted and sold its "Prop Shots" flying toys to mass market retailers and specialty retailers throughout the United States. Hesterberg Decl. Nov. 15, 2006 ¶¶ 3, 5. Defendants dispute this fact, and contend that plaintiff Lanard Ltd. does not directly "do business" in the United States. DSGI ¶ 4; Rapoport Decl. Dec. 4, 2006, Ex 1, 59:4–23.

Plaintiffs provide sufficient evidence to establish that a genuine issue of material fact exists as to the issue of defendants' access to the works. Defendants' motion for summary judgment is therefore DENIED as to the issue of access to plaintiffs' copyrighted works.

■ In analyzing the substantial similarity, the Ninth Circuit employs two tests: an objective "extrinsic" test and a subjective "intrinsic" test. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir.1996) (internal citations omitted). Under the extrinsic test, the court considers whether two works share a similarity of ideas and expression as measured by external, objective criteria. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442–43 (9th Cir.1994). In applying the extrinsic test, the court carries out an "analytic dissection" of the isolated elements of each work, excluding the other elements and the combination of elements. *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir.1997). Because the requirement is one of substantial similarity to *protected* elements of the copyrighted

---

**12.** Although plaintiffs provide sufficient evidence as to ownership of the copyrights in these toys, the Court concludes that a genuine issue of material fact remains as to whether the toys are useful articles. As such, plaintiffs have not yet established that Lanard Ltd.

owns a *valid* copyright in these toys. Summary judgment, therefore, cannot be granted as to the issue of ownership of a valid copyright in the "Drop Copter" toy, "Wild Copters" launder, and "Stunt Plane" launcher.

work, a court must distinguish between the protected and unprotected material in a plaintiff's work. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 (9th Cir.1992). Accordingly, although the extrinsic test requires consideration of both ideas and expression, it is important to keep in mind that ideas by themselves are not subject to copyright protection; only the expression of ideas is protected. *Eldred v. Ashcroft*, 537 U.S. 186, 219, 123 S.Ct. 769, 154 L.Ed.2d 683 (2003); 17 U.S.C. § 102(b)("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). Second, in applying the "intrinsic" test, the court determines whether a reasonable person would perceive a substantial similarity in the "total concept and feel" of each work. *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir.1984).[13]

### a. Plaintiffs' "Drop Copter," "Wild Copters," "Stunt Plane," and "High Flyers" Toys

 Plaintiffs argue that comparison of the elements of their "Drop Copter" toy and defendants' "Shoot Copter" toy reveals substantial similarities in the "copter I" body, wheel, and propeller, the rubber band attachment, the sling handle, the "copter II" body and ball, the "propeller II", and the assembled appearance (the "[p]ropeller II inserts into copter I body with copter II ball protruding in same position; sling rubber band attaches to

copter I hook at exact same location."). Plaintiffs' Renewed Motion for Preliminary Injunction, Appendix Chart: Analytic Dissection of Protectable Elements and Comparison to Novelty Toys ("Appendix Chart") at 1–2. Plaintiffs contend that the "Drop Copter" and "Shoot Copter" toys are virtually identical, and therefore both the intrinsic and extrinsic tests are satisfied.

Plaintiffs next argue that defendants' "Pull–N–Launch Plane Set" small plane is substantially similar to plaintiffs' "Stunt Plane" because it uses the same body, wing, propeller, and vertical stabilizer (tail) shapes. Plaintiffs contend that the extrinsic test is satisfied because, while all toy airplanes must include certain elements such as wings and propellers, they are asserting Lanard's particularized expression of these elements. Appendix Chart at 1–2. Plaintiffs assert that the particular shape of the wings and unusual L-shaped vertical stabilizer of the "Stunt Plane" is not necessary to convey the idea of a toy airplane. Plaintiffs' Opp'n at 13. Further, plaintiffs argue that the features of the "Stunt Plane" are not found on any real airplanes. *Id.* As to the intrinsic test, plaintiffs argue that, given the similarity of the toys' shapes, a child would think the toys have the same concept and feel. *Id.* at 16.

Plaintiffs further argue that defendants' "Pull–N–Launch Plane Set" large plane is substantially similar to their "High Flyers" toy because both toys have the same body, wing, propeller, and tail shapes. As to both the extrinsic and intrinsic tests, plain-

---

**13.** In support of their argument that the allegedly infringing toys are substantially similar to plaintiffs' copyrighted works, plaintiffs submit certified photocopies of the toys submitted to the Copyright Office in connection with the copyright registration applications. As noted in the Court's June 23, 2006 Order denying defendants' motion to stay the injunc-

tion, plaintiffs assert that "[t]he toys and packaging submitted to this Court in connection with Lanard's Motion for Preliminary Injunction are *identical* to the toys and packaging deposited with the United States Copyright Office." Plaintiffs' Response to Court's June 19, 2006 Order re: Motion to Stay Injunction (emphasis in original).

tiffs make essentially the same arguments as with the "Stunt Plane" toy.

Finally, plaintiffs argue that defendants' "Pull–N–Launch Plane Set" launcher is a combination of plaintiffs' "Stunt Plane" launcher and plaintiffs' "Wild Copters" launcher. Defendants' launcher is composed of a "launch pad" with a small cylinder at the front and a circular string handle on the side, a curved handle with six "indented channels" from top to bottom and the product name printed on the side, and a rectangular base. *See* Appendix Chart at 6–7. Plaintiffs contend that defendants' launcher is substantially similar to the "launch pad" of plaintiffs' "Stunt Plane" launcher and the handle and base of plaintiffs' "Wild Copters" launcher.

The Court agrees with plaintiffs that the toys appear quite similar, both in idea and expression under the extrinsic test, and in terms of their "total concept and feel" under the intrinsic test. However, no copyright protection may be afforded to elements of plaintiffs' expression that necessarily follow from the idea of a toy airplane that flies into the air using a hand-held launcher. *See Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir.1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls."). Plaintiffs are correct that the particular shape of the wings, propellers, and tails of the toy planes are not necessary to convey the idea of a toy airplane. However, the particular shapes of the toy planes may be necessary to cause the planes to fly through the air effectively, spin in the air, or perform "stunts." Likewise, as to the "Drop Copter," "Wild Copters" launcher, and "Stunt Plane" launcher, the expressive elements of these toys may be dictated by their function of either shooting into the air and spinning down to the ground, or launching the toy planes into the air.

Viewing the evidence in the light most favorable to plaintiffs, the Court concludes that a reasonable jury could find, based upon examination of plaintiffs' "Drop Copter," "Wild Copters," "Stunt Plane" and "High Flyers" toys, that the design of the toys is not dictated solely by functional concerns. Genuine issues of material fact therefore remain as to the issue of substantial similarity of plaintiffs' and defendants' toys. Accordingly, the Court DENIES the parties' motions for summary judgment as to plaintiffs' claims for infringement of the "Drop Copter," "Wild Copters," "Stunt Plane" and "High Flyers" toys.

**b. Plaintiffs' "Drop Copter" Packaging**

Comparing the packaging of plaintiffs' "Drop Copter" toy with Novelty's "Shoot Copter" toy packaging, plaintiffs argue that they are virtually identical. Plaintiffs' Opp'n at 15. Specifically, plaintiffs note that there are many common aspects in the packaging of these toys, including placement of the components in the packaging, the illustration of the hand launching the toy, the text and placement of text on the packaging, the illustrations simulating rotation of the toys, the captions and accompanying illustrations demonstrating operation of the toy on the back of the packaging, as well as the text of the instructions themselves. *Id.* Accordingly, plaintiffs argue that the extrinsic test for substantial similarity is satisfied. *Id.* As to the more subjective "intrinsic" test for substantial similarity, plaintiffs argue "the ordinary, reasonable person would find the 'total concept and feel' of the toys, and packaging demonstrate substantial similarity." *Id.* at 17. Accordingly, plaintiffs argue that they have satisfied the intrinsic, as well as the extrinsic tests for substantial similarity, with respect to their copyright infringement claim against defendants re-

garding the packaging of plaintiffs' "Drop Copter" toy. *Id.*

The Court concludes that plaintiffs have established a genuine issue of material fact as to the substantial similarity between plaintiffs' "Drop Copter" packaging and defendants' "Shoot Copter" packaging. The packaging of the toys appears to be very similar, including to the placement of the components in the packaging, the illustration of the hand launching the toy, the text and placement of text on the packaging, the illustrations simulating rotation of the toys, and the captions and accompanying illustrations demonstrating operation of the toy on the back of the packaging.

 The Court is skeptical as to whether plaintiffs can establish substantial similarity with regard to the text of the instructions on the back of the packaging of the toys. Given the simplicity of the toys, there are likely a limited number of ways of expressing their method of operation. *See, e.g., Allen v. Academic Games League of Am., Inc.,* 89 F.3d 614, 617–18 (9th Cir.1996); *Morrissey v. Procter & Gamble Co.,* 379 F.2d 675, 678 (1st Cir. 1967)("When the uncopyrightable subject matter is very narrow, so that 'the topic necessarily requires,' if not only one form of expression, at best only a limited number, to permit copyrighting would mean that a party or parties, by copyrighting a mere handful of forms, could exhaust all possibilities of future use of the substance.") (internal quotation omitted); *Affiliated Hosp. Prods. v. Merdel Game Mfg. Co.,* 513 F.2d 1183 (holding that the owner of a copyrighted rulebook could not prevent a competitor from publishing a similar rulebook, where the game was so simple that there were a limited number of ways of expressing its rules). However, the Court concludes that plaintiffs have established a genuine issue of material fact as to the issue of the substantial similarity

of the instructions on the back of the packaging.

Accordingly, the Court DENIES both parties' motions for summary judgment as to the substantial similarity of defendants' "Shoot Copter" packaging to plaintiffs' "Drop Copter" packaging.

### c. "Stunt Plane," "High Flyers," and "Wild Copters" Packaging

Plaintiffs do not offer any evidence suggesting that defendants' products infringe the packaging of the "Stunt Plane," "High Flyers," or "Wild Copters" packaging. Nor does it appear to the Court that substantial similarity exists between the packaging of these toys and defendants' packaging. As such, defendants' motion for summary judgment is GRANTED as to the "Stunt Plane," "High Flyers," and "Wild Copters" packaging, and plaintiffs' motion for summary judgment is DENIED as to this issue.

### D. Trade Dress Infringement

Defendants argue that they are entitled to summary judgment on plaintiffs' claim for trade dress infringement, and unfair competition based upon trade dress infringement, because plaintiffs have not provided sufficient evidence of secondary meaning. Plaintiffs respond that inherently distinctive product packaging may receive trade dress protection without proof of secondary meaning. Plaintiffs further argue that the expert report of Howard Marylander suggests that plaintiffs' toys and packaging have acquired secondary meaning.

 To establish a claim of trade dress or trademark infringement under the Lanham Act, plaintiff must show (1) ownership of the mark, and (2) a likelihood of customer confusion. *Brookfield Communications, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1046 (9th Cir.1999). "Trade dress can encompass either part or

all of the total image or overall impression created by a product or its packaging." McCarthy on Trademarks § 8:4. To be protected under the Lanham Act, a trademark or trade dress must be distinctive, or "capable of distinguishing the applicant's goods from the goods of others." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). Further, a functional product feature cannot serve as a trademark. *Id.* at 1048. For a trade dress claim, "the proper inquiry is not whether individual features of a product are functional or nondistinctive but whether the whole collection of features taken together are functional or nondistinctive." *Id.* at 1050.

■■■■ The Supreme Court has stated that product design trade dress can never be considered "inherently distinctive." *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Thus, proof of secondary meaning is a prerequisite to asserting a claim for infringement of an unregistered product design trade dress. However, certain types of packaging can . be classified as inherently distinctive, making proof of secondary meaning unnecessary. *Id.* at 212–213, 120 S.Ct. 1339.

■■■■ It appears to the Court that, when viewed in the light most favorable to plaintiffs, the "Drop Copter" packaging may be considered inherently distinctive. The placement of the photographs, the drawings, and phrases are potentially capable of distinguishing plaintiffs' goods from others. Particularly distinctive is the placement of the large copter and "power-band" launcher at an angle, with the small copter placed at an opposite angle overlapping the other parts of the toy. The overall

impression of the packaging appears to be distinctive. A reasonable jury could find that the packaging of the "Drop Copter" is inherently distinctive.[14] Therefore, plaintiffs need not present evidence of secondary meaning to defeat summary judgment as to the "Drop Copter" packaging.

■■■ In order to establish that the product design of plaintiffs' toys is protected as trade dress, plaintiffs' must provide evidence of secondary meaning. McCarthy on Trademarks states that the validity and strength of secondary meaning may be proved by evidence of actual confusion. McCarthy on Trademarks § 15:11; *see also Metro–Goldwyn–Mayer, Inc. v. Lee*, 212 Cal.App.2d 23, 27 Cal.Rptr. 833 (1963). Plaintiffs submit the declaration of Howard Marylander, who has 40 years of experience in marketing research. Decl. of Craig Mariam, December 4, 2006, Ex. 11. Marylander conducted a study to determine whether there is a likelihood of confusion between plaintiffs' and defendants' toys. Marylander concludes that there is evidence of actual confusion between plaintiffs' and defendants' toys. Although not conclusive on the issue, this evidence is sufficient to create a genuine issue of material fact as to secondary meaning.

■■■ Plaintiffs also cross-move for summary judgment on the issue of likelihood of confusion. However, plaintiffs offer no evidence of likelihood of confusion apart from Marylander's report. In the Ninth Circuit, eight factors are used to analyze the issue of likelihood of confusion: (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care

**14.** The packaging of plaintiffs' other toys, the "Wild Copters," "Stunt Plane," and "High Flyers," may also be inherently distinctive. However, plaintiffs apparently do not allege that defendants have copied the packaging of

these toys and, as discussed above, it does not appear to the Court that defendants' toy packaging is "substantially similar" to the packaging of plaintiffs' "Wild Copters," "Stunt Plane," and "High Flyers" toys.

likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir. 1979). Thus, evidence of actual confusion is but one factor in the likelihood of confusion analysis. The Court concludes that plaintiffs have not made a sufficient showing to meet the standard for summary judgment.

The Court concludes that genuine issues of material fact preclude summary judgment on plaintiffs' trade dress infringement claims. The Court therefore DENIES both parties' motions as to this claim.

### E. Plaintiff's Entitlement to Attorneys' Fees

Plaintiffs have not yet been determined to be the "prevailing party" for purposes of attorneys' fees. If plaintiffs do not succeed at trial, the issue of their entitlement to attorneys' fees will be moot. As discussed at oral argument, therefore, the Court finds the issue of attorneys' fees premature and declines to resolve the parties' dispute regarding this issue at this time. The Court therefore DENIES plaintiffs' motion for partial summary judgment, without prejudice to its being renewed at the conclusion of the case, and DENIES defendants' motion insofar as it pertains to attorneys' fees, without prejudice to its being renewed at the conclusion of the case.

## V. DEFENDANTS' MOTION TO TRANSFER VENUE

Defendants move, for the third time, for transfer of venue to the Southern District of Indiana. As explained above, Lanard Inc. remains a plaintiff in this case. As the Court discussed in its November 6, 2006 order, the material facts remain the same. The Court again concludes that the balance of the relevant factors does not dictate in favor of a transfer, and that defendants have failed to satisfy their burden of showing that convenience and justice require transfer. The Court accordingly DENIES defendants' motion for transfer of venue. Any further attempt to renew this motion, absent a showing of a material change of the relevant facts, shall result in the Court's issuing monetary and other sanctions against defendants.

## VI. CONCLUSION

In accordance with the foregoing, the Court hereby DENIES without prejudice plaintiffs' motion for partial summary judgment as it pertains to plaintiffs' entitlement to attorneys' fees.

The Court hereby GRANTS defendants' motion for summary judgment on plaintiffs' claim for unfair competition based upon copyright infringement; GRANTS defendants' motion for summary judgment on plaintiffs' claim for copyright infringement of the "Stunt Plane" packaging, "High Flyers" packaging, and "Wild Copters" packaging; DENIES defendants' motion for summary judgment without prejudice as to plaintiffs' entitlement to attorneys' fees; and DENIES defendants' motion in all other respects.

Plaintiffs' motion for summary judgment is GRANTED as to plaintiffs' ownership of the copyrights to the "Stunt Plane" and "High Flyers" toy airplanes, and as to the "Drop Copter" packaging.[15] Plaintiffs'

---

**15.** As the Court indicated *infra,* the Court GRANTS plaintiffs' motion for summary judgment as to ownership of the copyrights in the "Stunt Plane," "High Flyers," and "Wild Copters" packaging. However, the Court also GRANTS defendants' motion as to the issue of infringement of these works based upon the lack of substantial similarity between plaintiffs' "Stunt Plane," "High Flyers," and "Wild Copters" packaging, and

cross-motion is DENIED in all other respects.[16]

In light of the dispute between the parties regarding the 1994 "Wild Copters" copyright registration, the Court grants leave to defendants to request limited discovery regarding the 1994 registration. Defendants must specify what discovery they intend to make regarding the registration.

Finally, the Court DENIES defendants' motion for transfer of venue.

---

the packaging of defendants' "Pull–N–Launch Plane Set."

16. The Court also, for purposes of clarification, notes that plaintiffs have not established that they own a *valid* copyright in the "Drop Copter" toy, "Wild Copters" launcher, and "Stunt Plane" launcher as a matter of law. Although plaintiffs have submitted evidence to establish that they own the copyrights in these toys, a genuine issue of material fact remains as to whether these toys are useful articles. The parties' motions are therefore DENIED as to these toys.